UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN L. TAYLOR,                        )
                                       )
            Plaintiff,                 )   Case No. 1:05-cv-340
                                       )
v.                                     )   Honorable Robert Holmes Bell
                                       )
MICHIGAN PAROLE BOARD et al.,          )
                                       )
            Defendants.                )
_____)

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) ("PLRA"), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.        Factual Allegations

Plaintiff John L. Taylor presently is incarcerated with the Michigan Department of Corrections and housed at the Florence Crane Correctional Facility. He sues the Michigan Parole Board, its Chairman, John Rubitschun, and two individual members Barbara Sampson and William Slaughter.

On January 30, 1988, Plaintiff was convicted as a fourth felony offender of larceny over $100.00, and he was sentenced to a term of five to thirty years. At some unspecified time, Plaintiff was granted parole. On August 26, 1997, while he was on parole, Petitioner committed retail fraud, for which his parole was revoked. Plaintiff was convicted of first-degree retail fraud and sentenced on March 4, 1998, to a term of one to three years, to run consecutively to the remainder of his 1988 sentence. Plaintiff apparently was released on parole a second time, which was revoked in approximately January 2003, for technical rule violations.

On January 24, 2005, Plaintiff was interviewed for parole by Defendant Slaughter. Plaintiff alleges that he was strongly advised by his resident unit manager to not volunteer information, but simply respond to questions, ostensibly because Slaughter was conducting his last parole interviews before stepping down and was granting parole to most prisoners who came before him. Plaintiff therefore merely responded to Slaughter's questions rather than volunteering additional information. Plaintiff alleges that Slaughter interviewed him for only three minutes and failed to inquire into eleven of the twelve questions listed on the Notice of Intent to Conduct a Parole Interview. At the end of the interview, Slaughter advised Plaintiff that he would vote for parole. Plaintiff was denied parole on March 8, 2005.

Plaintiff raises five counts in his complaint. In four of those counts, Plaintiff alleges that Defendants violated his right to due process under the Fifth and Fourteenth Amendments: (1) Defendants calculated his parole guidelines in a manner constituting an impermissible alteration of Michigan law; (2) Defendants improperly scored his parole guidelines; (3) Defendants issued an improper notice of intent to conduct a parole interview and conducted an improper parole interview; and (4) Defendants denied his parole without an adequate explanation of the reasons, in violation of MICH. COMP. LAWS § 791.235(12) and MICH. DEP'T OF CORR., Policy Directive 06.05.104. In the fifth count of his complaint, Plaintiff alleges that he was denied parole on the basis of his history of substance abuse, in violation of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132.

Plaintiff seeks declaratory and injunctive relief preventing Defendants from violating state and federal law in future parole hearings. He does not seek reversal of the 2005 parole decision or immediate release on parole.[1]

---

[1] A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484, 493 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). The Supreme Court has held that a state prisoner cannot make a cognizable claim under § 1983 for an alleged unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *see also Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997). However, in *Wilkinson v. Dotson*, 125 S. Ct. 1242, 1248 (2005), the Supreme Court clarified the *Heck* rule, finding "that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of confinement or its duration.") (emphasis in original). Plaintiff does not seek release from prison; rather, he seeks injunctive relief with respect to future hearings. As a consequence, under *Wilkinson*, his success in the action would not necessarily demonstrate the invalidity of his continued confinement, so his action does not appear to be *Heck*-barred. Nevertheless, assuming that Plaintiff's action is cognizable under § 1983, it fails to state a claim as set forth herein.

II.     Sovereign Immunity

Plaintiff has named the Michigan Parole Board as a defendant, in addition to three individual members of the board. The Michigan Parole Board is part of the Michigan Department of Corrections. MICH. COMP. LAWS § 791.231a(1). Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, if the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Therefore, the Michigan Parole Board, as part of the Department of Corrections, is immune from injunctive and monetary relief. *See Fleming v. Martin*, No. 01-1422, 2001 WL 1176354 (6th Cir. Sept. 26, 2001) (Michigan Parole Board entitled to Eleventh Amendment immunity); *Carson v. Parole Board*, No. 88-1277, 1988 WL 79688 (6th Cir. July 27, 1988) (same).

III.    Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d

810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Due Process

Plaintiff claims that he was deprived of due process by the improper scoring of his parole guidelines, the inadequacy of his parole interview, the inadequacy of the notice of his hearing and the failure to explain his parole denial. He fails to raise a claim of constitutional magnitude. Plaintiff has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so, and thus, the presence of a parole system by itself does not give rise to a constitutionally-protected liberty interest in parole release. *Id.* at 7; *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan procedural authorities to deny parole," has held that the Michigan system does not create a liberty interest in parole. Subsequent to its 1994 decision, the Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that Michigan's Parole scheme creates no liberty interest in being released on parole. *See Ward v. Stegall*, No. 03-1804, 2004 WL 614581 (6th Cir. March 24, 2004); *Martin v. Ohio Adult Parole Auth.*, No. 03-3642, 2003 WL 22976604, at *1 (6th Cir. Dec. 8, 2003); *Bullock v. McGinnis*, No.

00-1591, 2001 WL 180978, at *2 (6th Cir. Feb. 14, 2001); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000); *Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19, 2000); *Irvin v. Michigan Parole Bd.*, No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000); *Clifton v. Gach*, No. 98-2239, 1999 WL 1253069, at *1 (6th Cir. Dec. 17, 1999). Also, in unpublished decisions, the Sixth Circuit has held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Michigan Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); *Janiskee v. Michigan Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. April 10, 1990). Finally, the Michigan Supreme Court has recognized that there is no liberty interest in parole under the Michigan system. *Glover v. Michigan Parole Bd.* 596 N.W.2d 598, 603-04 (Mich. 1999). Accordingly, Plaintiff has no liberty interest at stake. Because Plaintiff has no liberty interest at stake, he fails to state a claim for a violation of his procedural due process rights. *See Sweeton*, 27 F.3d at 1164-65.

Moreover, section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). To the extent that plaintiff's complaint presents allegations under state law, this Court declines to exercise jurisdiction. The Sixth Circuit has stated that district courts should generally decline to exercise supplemental jurisdiction over state law claims under these circumstances. *See*

*Landefeld v. Marion General Hosp.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Hawley v. Burke*, No. 97-1853, 1998 WL 384557, at *1-2 (6th Cir. June 18, 1998). Assuming Plaintiff intends to raise a claim under state law, that claim will be dismissed without prejudice.

### B. Americans With Disabilities Act

Plaintiff claims that Defendants violated the ADA by denying his parole on the basis of his "substance abuse disability." Title II of the ADA provides: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To make out a prima facie case under Title II of the ADA, a plaintiff must establish that (1) he has a disability; (2) he is otherwise qualified; and (3) he is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of his disability. *Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005) (citing *Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003). Therefore, in the instant case, in order to state a claim under the ADA, Plaintiff must show that he is a "qualified person," that his history of substance abuse is a "disability," that parole is a "service, program, or activity" of the state, and that he is being denied parole solely on the basis of his disability.

Here, even if Plaintiff could show that he is handicapped within the meaning of the ADA and that parole is a program of the state, his complaint contains no allegations that the parole board discriminated against him solely because of his handicap. *Id.*; *see also Lee v. Michigan Parole Board*, No. 03-1775, 2004 WL 1532563, at *1 (6th Cir. June 23, 2004). Indeed, his own complaint

alleges that Defendants incorrectly considered other factors, such as the nature of his underlying offense, in calculating his parole guideline score.

Moreover, the ADA does not categorically bar a state parole board from considering an inmate's disability in making an individualized assessment of the future dangerousness of the inmate. *See Thompson v. Davis*, 295 F.3d 890, 898 n.4 (9th Cir. 2002), *cert. denied*, 538 U.S. 921 (2003). Without question, the parole board has a legitimate penological interest in considering a prisoner's substance abuse history during an individualized inquiry for parole suitability. *Id.* In this case, the Michigan Parole Board properly considered Plaintiff's history of substance abuse and other relevant factors in making an individualized parole determination. The parole board relied heavily on many substantial factors weighing against the grant of parole: Plaintiff's lengthy criminal history, which included sexual crimes; his history of probation and parole failure and failure to complete a delayed sentencing opportunity; his history of having committed a crime while under supervision; and the fact that he had an unstable social or family history. In the face of these other factors considered by the parole board, he cannot assert that he was denied parole solely on the basis of his history of substance abuse. Accordingly, Plaintiff's ADA claim is without merit.

### **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action fails to state a claim and will therefore be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no

good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $255 appellate filing fee in one lump sum.

>This is a dismissal as described by 28 U.S.C. § 1915(g).

>A Judgment consistent with this Opinion will be entered.


Date:     June 30, 2005                         /s/ Robert Holmes Bell
                                                ROBERT HOLMES BELL
                                                CHIEF UNITED STATES DISTRICT  JUDGE